**Stephen GALLI, Plaintiff,**

v.

**Jill MORELLI, Defendant.**

**No. 01–CV–1056.**

United States District Court, S.D. Ohio, Eastern Division.

Aug. 6, 2003.

Emily Jane Lewis, Keith William Franken, Law Office of Emily J. Lewis, Dublin, OH, for plaintiff.

David S. Bloomfield, Jr., Porter Wright Morris & Arthur, Columbus, OH, Richard Nicholas Coglianese, Ohio Attorney General, Columbus, OH, for defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Defendant's Motion for Summary Judgment, filed on December 16, 2002. The Defendant seeks summary judgment with respect to the Plaintiff's claim brought pursuant to 42 U.S.C. § 1983, alleging retaliation in violation of the First Amendment to the United States Constitution.

For the following reasons, the Court **DENIES** the Defendant's Motion for Summary Judgment in part and **GRANTS** the Defendant's Motion in part.

### II. FACTS

The Plaintiff, Stephen Galli, was employed with The Ohio State University's ("OSU") Architectural Planning Office as an "Architect 2." In his position, Galli often served as a "project captain," the person typically responsible for early planning on an architectural project, selection of the architect, administration of the design phase, bidding, construction, oversight, and warranty period. Galli worked under the supervision of the Defendant, Jill Morelli, the University Architect, from some time in 1995 until his termination in November 1999. In his role as project captain for any architectural project, Galli reported to Morelli.

In her supervisory position as the University Architect, Morelli conducted annual performance evaluations of all Architect 2s, including Galli. Morelli conducted these evaluations pursuant to the "360–degree" evaluation process that she designed. In conjunction with the evaluations, Morelli requested that the employee

being evaluated provide her with a list of approximately five people with whom the employee had worked during the previous year. Morelli then randomly selected three of the five people listed, and sent those three people a form on which to provide an evaluation of the employee. Once returned, those evaluations were compiled, along with Morelli's own evaluation form. At her deposition, Morelli testified that each of the three evaluations from the individuals outside the University Architect's office was to be weighed equally with Morelli's personal evaluation in determining the employee's overall evaluation rating. After compiling the four written evaluations-three from outsiders and one from Morelli–Morelli met with each employee to discuss the evaluation.

In 1995, the year Galli was first evaluated by Morelli, Galli's written performance evaluation included eleven areas for review. Each area was to be assigned one of four ratings: excellent, above average, average, or below average. In that evaluation, Galli received a rating of "excellent" or "above average" in nine out of eleven categories. Galli received a score of between "average" and "below average" in the following area, which fell under the general category of communications: "Communicates in a logical and clear manner in preparing reports, letter, memos, and dealing with co-workers, clients, subordinates, etc. Handles conflicts in a calm and professional manner." In the comments portion of the evaluation form beneath this area, Morelli wrote: "Definitely an area for improvement. Highly recommend a class in this."

In 1996, the performance evaluation form was altered to include seven, instead of eleven, areas of review. Galli received "above average" or "average" on six of the seven criteria, including an "above average" for "Shows professional courtesy and respect; is friendly and helpful." He re-ceived a rating of "below average," however, in the category regarding an ability to communicate "in a logical and concise manner." In the comments under that part of the evaluation, Morelli wrote: "has forgotten critical stakeholders at critical times; working very hard on clarity of e-mail but sometimes assumes a knowledge level that is not present." In the comments under "exhibits personal growth/improvement," on which Galli received an "above average," Morelli noted that Galli "wishes to improve and has exhibited that in his much improved e-mails."

On his 1997 evaluation, which was scored on a scale of one to five, with five being the highest, Galli scored a four for his ability to communicate "in a logical and concise manner." Morelli also commented that Galli's e-mail communication was "much improved." She did note, however, that he is sometimes perceived as "picky" by those with whom he works. Overall, Galli's 1997 evaluation included scores ranging from three to five, or average to excellent. Two of the people contacted by Morelli for outside reviews as part of the 360–degree evaluation gave him scores of four or higher on all categories. One of those two gave Galli a score of five on his ability to communicate in a logical and concise manner, and commented that Galli is "always striving for consensus but making the university's position clear." That same reviewer, however, also commented that Galli "didn't really see the difficulties in coordinating communications between multiple contractors or wasn't able to facilitate them adequately to have a timely conclusion to the project."

In his 1998 evaluation, Galli again received an above average score in the area of communications. Regarding his ability to communicate in a concise and logical manner, Morelli commented that this was "an area of significant improvement particularly in 'written' communication." She

noted, however, that she had few observations of Galli's verbal communications. Although the communications area of the 1998 evaluation was positive, in that same evaluation Morelli commented that Galli had alienated OSU's Traffic and Parking Division ("T & P"). Apparently, that comment arose out of Galli's refusal to pay his parking tickets and his requests that T & P cancel those tickets. Ultimately, someone from T & P contacted Morelli about Galli's refusal to pay his tickets. Morelli alleges that, as a result of that episode, it became difficult for the Architect's Office to work with T & P. All three of the people selected by Morelli to provide outside evaluations in 1998 gave Galli scores of three, or average, or higher.

During the course of his employment with OSU, Galli oversaw numerous OSU building projects of various sizes. At any one time, he oversaw anywhere between ten and twenty-five projects. Of particular importance to this case is Galli's assignment as Project Captain to the construction phase of the Stillman Hall renovation project, which involved the renovation of the first four floors of the building that houses the Department of Social Work.[1] That project was state funded and state administered, which meant that OSU's Architect's Office merely assisted the State Architect's Office in administering the project.

Galli was assigned to work on the Stillman Hall project in 1998. Five primary parties or entities formed the team responsible for the Stillman Hall project: (1) the State Architect's Office, which was represented by Howard Geisler, the Acting State Architect, and Barry Strickland,

a Field Representative; (2) OSU, which was represented by Galli and Morelli; (3) the Associate Architecture firm,[2] HKI Associates, Inc. ("HKI"), which was represented by Kay Onwukwe and Leon Humphrey; (4) the Consulting Architect, Moody/Nolan Ltd., Inc. ("Moody/Nolan"), which was represented by Paul Pryor; and (5) the primary contractor, the Cody Zeigler Construction Company ("CZ"). Galli's responsibilities as Project Captain included meeting with representatives of each party or entity on the "construction team" once per week to discuss the status of the work being done and the progress of the work yet to be done on the project. Galli's role at those meetings was to listen, facilitate, and solve problems between the university and the various parties to the extent possible.

While working on the Stillman Hall project, the Plaintiff identified and spoke to members of the construction team, including Morelli, about several issues. First, Galli identified a topsoil issue. In June 1998, CZ, the contractor, requested a field work order, claiming that additional excavation of topsoil beyond that called for in the original contract was necessary. Onwukwe, the representative from HKI, and Galli signed two field work orders to approve this additional topsoil excavation. On July 10, 1998, however, while Galli was observing the excavation work, he noticed that CV was excavating clay, not topsoil. He told the contractor to stop excavating. The excavation was then reviewed by a soil engineering contractor, who determined that the additional topsoil excavation for which CZ had requested the field work order had not been necessary.

---

1. Another Architect 2, Barbara Koelbl, served as the Project Captain during the initial phases of planning, architect selection, designing, and bidding.

2. According to Morelli, the "Associate Architect" is the "architect of record." The Associate Architect has various administrative and architectural functions, including reviewing bids of contractors, reviewing and resolving issues relating to construction delays, and interpreting contract documents.

Subsequently, CZ submitted a pay request for the full field work order amount. Galli refused to approve this pay request, explaining to Morelli that he believed that it sought payment for work that was neither necessary nor performed. During his deposition, Paul Pryor, an employee of Moody–Nolan, testified that Galli's actions in refusing to sign the pay order caused discord among the construction team.

Second, in February 1999, Galli voiced his concern to members of the Stillman Hall renovation team, including Morelli, that the contractor had improperly constructed the wall envelope, making the wall envelope defective. According to Morelli, the problems with the wall envelope were not resolved among members of the construction team until after Galli was removed from the project.

Soon thereafter, in March 1999, Galli advised the team members of safety issues that he said resulted from the improper application of fireproofing to various columns and walls inside and outside the building by CZ, the general contractor. The issue regarding the allegedly improper fireproofing remained unresolved during Galli's tenure as Project Captain.[3]

In June 1999, Morelli began receiving complaints from Howard Geisler, the acting State Architect, and Paul Pryor, from Moody/Nolan, regarding Galli's work on the Stillman Hall project. Specifically, Pryor complained that Galli was argumentative, would not work with the other members of the construction team, and was adversely impacting the progress of the project. Pryor also stated that Galli's indecisiveness caused several delays on the project. Upon Morelli's request, Pryor documented his concerns in a letter dated June 14, 1999, in which he stated the following regarding Galli's work on the Stillman Hall project: "Important change orders have been misplaced and delayed; pay requests have been delayed and not processed in a timely manner or held for invalid reasons. Time and again agreements were made at a meeting only to be changed or challenged the next day."

Around the same time, Geisler informed Morelli that his field representatives had a difficult time working with Galli because he was argumentative, and conflicts were not being resolved. At Morelli's request, Geisler, too, memorialized his complaints about Galli in an e-mail to Morelli. In his e-mail, Geisler stated that he was concerned that Galli had exhibited the following:

1. Criticizing the Associate in front of the Contractors at the progress meetings.

2. Failure to process pay requests in a timely manner early in the project while insisting that this had occurred.

3. Inability to work with the cooperation of the owner/administration team. . . .

4. Unusual concern for seemingly minute detail items in the contract documents and in the contractor performance. . . .

During his deposition, Geisler also stated that Galli had been unable to work effectively in a team environment, and that he raised issues in an inappropriate manner.[4]

---

**3.** After Galli's removal from the project, the fireproofing issue became the subject of an administrative proceeding. During the hearing, Morelli agreed that the wall that Galli had alleged was improperly fireproofed should come down and be rebuilt properly. Ultimately, CZ agreed to remove the improperly fireproofed wall, with OSU sharing in the cost of doing so.

**4.** Galli insists that he was not the cause of any delays on the Stillman Hall project. He argues that he could not have caused any such delays because all parties agree that, as a

Having received these complaints, at Galli's 1999 performance evaluation, held on June 29, 1999, Morelli removed Galli from his role as Project Captain of the Stillman Hall project. Morelli also told Galli to look for a job outside the university. Apparently as a basis for her decision, Morelli showed Galli the letter from Pryor and the e-mail from Geisler. Galli was replaced by Barbara Koelbl as Project Captain for the Stillman Hall project.

Although Galli received a score of three or higher in all areas on the 1999 evaluation, including a score of between three and four regarding the ability to communicate in a logical and concise manner, Morelli included a number of critical comments in the evaluation. Regarding Galli's communication skills, for example, Morelli stated: "Needs work in this area. Sometimes makes leaps to information that the reader cannot follow. Remember your audience." In another portion of the 1999 evaluation, Morelli commented that Galli had been "criticized this year for 'attacking' in inappropriate venues." Regarding Galli's ability to take initiative, foresee problems, and generate effective solutions, Morelli stated: "Generating effective solutions are not necessarily just yours. Perfectionism is so strong; sometimes Steve forgets [about] compromise and consensus to reach solution." She concluded the written evaluation by saying: "[Galli] struggles more than most [with] issue of

specific contractual responsibilities . . . The global perspective is elusive. Needs to understand the university is a political place. These issues need to be factored in." Morelli also verbally criticized Galli's refusal to compromise "in the gray areas,"[5] as well as his failure to understand that the university is "a political place."[6] At the end of the evaluation meeting, Morelli agreed to meet with Galli periodically to assess whether he had made any improvements in his work performance.

From July through October 1999, Galli continued to work on other projects at OSU. During this time period, Galli allegedly raised a concern regarding a problem with asbestos at Stillman Hall.[7] Specifically, on August 24, 1999, Galli saw asbestos being disposed of in a manner he did not consider proper. He contacted both Robert Malone, OSU's "asbestos expert," and Barbara Koelbl regarding this issue; he did not contact Morelli. Koelbl handled the issue, but Galli apparently disagreed with the way in which it was handled. Although Galli did not inform Morelli that he disagreed with the way Koelbl handled the issue, he did express that opinion to Malone. He also contacted the Occupational Safety and Health Administration ("OSHA") regarding the asbestos issue. OSHA allegedly told Galli to work through the university to resolve the matter. Morelli was unaware that Galli had contacted

non-contracting party, his role was merely advisory. He states that it was other team members, not him, who created the problems during construction that caused friction and delay.

5. During her deposition, when asked what "gray areas" were, Morelli stated:

Everybody's perception of a problem is different. Everyone's perception of solutions are different. Everyone's perceptions of what results in a proper outcome is different. That is necessary to bring those par-

ties together that have vested interests and to find the best solution based on competing constraints, resources.

6. Despite these negative comments by Morelli, the two outside evaluators both gave Galli scores of five, the highest possible score, in all categories on the 1999 evaluation.

7. Almost all of the buildings on OSU's campus built prior to 1972 contain some amount of asbestos. Accordingly, whenever a building is renovated, Project Captains and others working on the renovation look for asbestos.

OSHA regarding this issue until after he had been terminated from employment.

On October 6, 1999, a co-worker gave Galli a copy of a draft termination letter Morelli had faxed to Human Resources for review.[8] The draft termination letter stated that Galli was being fired primarily for his verbal communications and for "contentious change orders," which Morelli said demonstrated Galli's inability to negotiate effectively in the university's best interest. Then, on November 1, 1999, Morelli issued a final termination letter, terminating Galli's employment with OSU's Architect's Office. The final termination letter indicated that the termination was based on Galli's poor evaluations in several areas, including the area of communication. The letter indicated that Morelli had determined that, since the June 1999 evaluation, Galli had not shown improvement in the areas they had discussed at that time. The final letter provided no more specific information as to the basis for Galli's termination.

On October 29, 2001, Galli filed a Complaint with this Court, naming both Morelli and Geisler as Defendants. After dismissing Geisler as a party, Galli filed an Amended Complaint. The Amended Complaint sets forth a claim against Morelli in her individual and official capacities under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment. In particular, Galli alleges that he was terminated from his employment with OSU in retaliation for his having raised concerns about building health and life safety issues, such as the presence of asbestos in student facilities, in relation to the Stillman Hall project.

This matter is now before the Court on the Defendant's Motion for Summary Judgment. After oral argument on the Defendant's Motion, the Plaintiff filed a

Motion to Dismiss Defendant Jill Morelli in Her Individual Capacity. The Court granted that motion in a separate order. Accordingly, only the First Amendment retaliation claim brought against Morelli in her official capacity remains pending before the Court as the subject of the Defendant's Motion for Summary Judgment.

The Defendant asserts she is entitled to summary judgment on the Plaintiff's First Amendment retaliation claim on the following grounds: (1) Galli cannot establish a *prima facie* case of First Amendment retaliation; (2) Morelli would have made the same employment decision even in the absence of Galli's speech; and (3) the Eleventh Amendment bars Galli's claim brought against Morelli in her official capacity. The Court will consider each of these arguments in turn.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir.2001). In response, the non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993).

---

**8.** It is unclear who the co-worker who provided Galli with a copy of the draft termination letter was, or how he or she obtained the draft letter.

"[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The non-moving party, however, "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## IV.  ANALYSIS

### A.  Merits of the First Amendment Claim

■ To establish a claim of retaliation under the First Amendment, the plaintiff must set forth three elements:

(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1048 (6th Cir.2001) (citation omitted).

■ The first element, that the plaintiff was engaged in a constitutionally protected activity, requires the plaintiff to make two distinct showings. First, the plaintiff must make a threshold showing that the speech addressed a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 143–46, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If the plaintiff's speech touches upon a matter of public concern, then the plaintiff must demonstrate that his interest in speaking outweighs the efficiency interests of the employer. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Rahn v. Drake,* 31 F.3d 407, 411 (6th Cir.1994). If the plaintiff's speech does not constitute speech on a matter of public concern, however, the Court need not scrutinize the reason for the employment action. *Dambrot v. Cent. Mich. Univ.,* 55 F.3d 1177, 1186 (6th Cir. 1995).

■ Once the plaintiff establishes the necessary three elements, the burden shifts to the defendant to demonstrate that she would have taken the same employment action even in the absence of the protected speech. *Jackson v. Leighton,* 168 F.3d 903, 909 (6th Cir.1999) (citations omitted). If the defendant can meet this burden, she is entitled to summary judgment. *Id.*

#### 1.  *Prima Facie* Case

##### a.  *Speech as a Matter of Public Concern*

■ Whether speech addresses a matter of public concern is a question of law to be "determined by the content,

form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684. With respect to the question of content, speech relating to any matter of political, social, or other concern to the community is speech addressing a matter of public concern. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 893 (6th Cir.2003) (citing *Connick*, 461 U.S. at 146, 103 S.Ct. 1684).

Turning to the question of whether the particular speech at issue touches upon matters of public concern, the Court recognizes that Galli's claim of retaliation is based on four distinct groups of statements, including his speech regarding: (1) the allegedly fraudulent request for payment from the contractor for the topsoil work; (2) the allegedly improper fireproofing; (3) the allegedly defective wall envelope; and (4) the allegedly improper disposal of asbestos. As a preliminary matter, the Court rejects the argument, set forth by the Defendant, that the Plaintiff may not rely upon his speech regarding the allegedly fraudulent change order for the topsoil work as a basis for establishing his *prima facie* case. Although the Complaint is worded in terms of retaliation for speech relating to "building health and life safety issues, such as the presence of asbestos in student facilities," the Complaint also sets forth in some detail the nature of the incident surrounding the contractor's request for payment for the topsoil work that Galli had deemed to be unnecessary. Through that discussion in the Complaint, although not directly referenced in the retaliation count, the Defendant was put on notice that Galli's speech regarding that allegedly fraudulent request for payment for the topsoil work formed part of the basis of his Complaint.

■ With respect to content, it is clear that Galli's speech regarding the wall envelope, the fireproofing, and the asbestos issue touch on matters of public concern in that they all involve matters of public safety. Members of the community at large may enter Stillman Hall, and could at any time be affected if the building was improperly constructed, or if asbestos was improperly disposed of, as indicated in Galli's speech. *See Hoover v. Radabaugh*, 307 F.3d 460, 466 (6th Cir.2002) ("When an institution oversees some aspect of public safety, the correct operation of that institution is a matter of public concern.") (citing *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir.1999)); *Chappel v. Montgomery County Fire Protection Dist. Number 1*, 131 F.3d 564, 578 (6th Cir.1997) (stating that matters of public safety are near the "zenith" of public concern). Likewise, the speech regarding the allegedly fraudulent request for payment also touches upon a matter of public concern in terms of its content, as it relates to an alleged misuse of, and fraud upon, public funds. *See Chappel*, 131 F.3d at 578 (recognizing that, like matters of public safety, matters relating to the mismanagement or misappropriation of public funds are near the "zenith" of public concerns); *see also Perry v. McGinnis*, 209 F.3d 597, 605–06 (6th Cir.2000) (concluding that the plaintiff's speech, which related to an attempt to ensure that the plaintiff's employer was acting in accordance with the law, touched on matters of public concern).

With respect to their context, it is likewise clear that Galli's speech touched upon matters of public concern. Galli did not engage in this speech as part of a personal employment dispute, or in furtherance of his own personal interests. Rather, he made these statements in an attempt to ensure that public funds were used properly, and that a building that was going to be accessible to the public was built in a proper and safe manner. In short, Galli engaged in this speech as part of an effort to further the public interest.

The fact that Galli engaged in this speech in the course of his employment duties does not take his speech out of the realm of speech touching on matters of public concern.[9] *See Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1052 (6th Cir.2001) (finding that speech expressed by a teacher to her class in the course of her teaching duties was protected speech that touched upon matters of public concern); *Perry,* 209 F.3d at 606 (concluding that, where the plaintiff engaged in speech by issuing decisions in prison misconduct hearings, the plaintiff had engaged in constitutionally protected speech even though he was required to issue those decisions as a part of his job). As the Sixth Circuit recently stated in *Cockrel,* "the key question is not whether a person is speaking in his role as an employee or a citizen, but whether the employee's speech in fact touches on matters of public concern." *Cockrel,* 270 F.3d at 1052 (citing *Connick,* 461 U.S. at 148–49, 103 S.Ct. 1684).

Furthermore, the fact that Galli did not publicly disseminate his speech regarding the topsoil issue, the wall envelope, and the fireproofing issue is also irrelevant to the finding that his speech on those issues touched upon matters of public concern.[10] A public employee's choice to communicate privately with his employer rather than to spread his views before the public does not strip the speech at issue of its relation to a public concern. *Perry,* 209 F.3d at 608 (citing *Givhan v. Western Line Consoli-*

dated *Sch. Dist.,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)).[11]

Therefore, the Court finds that the Plaintiff has demonstrated that all of the speech upon which he bases his retaliation claim touches upon matters of public concern.

### b. Balancing Test: Speech v. Employer's Interests

■ If the speech is found to be a matter of public concern, the speech must be balanced against and outweigh the "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The Sixth Circuit has articulated that "[i]n striking the balance, courts should consider whether an employee's comments meaningfully interfere with the performance of [his] duties, undermine the legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by supervisors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Commonwealth of Ky.,* 24 F.3d 1526, 1536 (6th Cir.1994). The Court is to give "substantial weight" to the employer's concerns of workplace efficiency, harmony, and discipline. *Cockrel,* 270 F.3d at 1054.

■ The *Pickering* balancing test weighs in favor of the Plaintiff with respect to all of his speech. Galli's speech regarding the allegedly fraudulent change

**9.** The Court recognizes that Galli's speech regarding the allegedly improper disposal of asbestos was not made in the course of his employment because, at the time that he engaged in this speech, he had already been removed from his position as Project Captain of the Stillman Hall project.

**10.** The Court recognizes that Galli did publicly disseminate his speech regarding the asbestos issue by contacting OSHA.

**11.** The Defendant attempts to distinguish *Perry* on the ground that, there, the speech that was privately communicated related to a matter that is inherently of public concern, to wit, race discrimination. As discussed above, however, issues relating to public safety are also inherently matters of public concern.

order for the topsoil work, the wall envelope, and the fireproofing did not interfere with the performance of his duties. To the contrary, Galli's employment duties encompassed engaging in that precise speech.[12] Although Galli's speech may have caused dissension among the construction team, and may have delayed progress on the Stillman Hall project,[13] it furthered the Defendant's goal of constructing the building in a proper manner and resolving controversies in the construction phase of the project in the best interest of the university by attempting to ensure that the building was constructed properly. *See Hoover v. Radabaugh*, 307 F.3d 460, 466 (6th Cir.2002) (holding that the interest in public safety outweigh's the state's interest in conducting its affairs collegially).

Likewise, the Court finds that the *Pickering* balancing test weighs in favor of the Plaintiff with respect to his speech regarding the allegedly improper disposal of asbestos. Indeed, it is difficult for the Court to conceive of how that speech could have interfered with Galli's employment duties when he had already been removed from the Stillman Hall project at the time that he engaged in that speech. Furthermore, it appears that the speech caused little disruption or interference with the Defendant's goal of completing the Stillman Hall project in an efficient manner as the issue appears to have been handled rather expeditiously by Koelbl after it was raised by Galli.

Therefore, the Court finds that the Plaintiff has satisfied the first element of his *prima facie* case by demonstrating that his speech was constitutionally protected.

#### c. Injury Likely to Chill Speech

■ To satisfy the second element of the *prima facie* case, Galli must establish that the Defendant's adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity. The injury that Galli suffered was termination from employment, which is an injury that is no doubt likely to chill a person of ordinary firmness from continuing to engage in the protected activity. *Hoover*, 307 F.3d at 466–67 (citing *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir.1999)).

Therefore, the Court finds that Galli has established this element of his *prima facie* case.

#### d. Causation

■ Third, the Plaintiff must establish that the adverse employment action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. Unlike the first two elements of the *prima facie* case, which involve ques-

---

**12.** Although the Defendant contends that it was not a part of Galli's job duties to raise these issues in a contentious manner, as he did, this raises a question of fact regarding the manner in which Galli engaged in his speech; this argument does not negate the fact that speaking out on safety and code compliance issues constituted the performance of the Plaintiff's employment duties.

**13.** The Court recognizes that when speech results in a "contentious and periodically disrupted work environment," that fact weighs in favor of the defendant in the *Pickering* balance. Nonetheless, despite the Defen-

dant's argument that, here, the *Pickering* balance weighs in her favor because Galli's speech caused these precise results, the Court finds that summary judgment in favor of the Defendant could not be proper on this basis. Although the issue of whether the Plaintiff's interests in the speech outweigh the employer's interests is a question of law to be determined by the Court, here, that question of law cannot be determined without resolving a disputed issue of fact. That is, the Plaintiff disputes the Defendant's contention that his speech caused any delays or problems on the Stillman Hall project. Therefore, summary judgment would not be proper on this basis.

tions of law, this element relates to a question of fact. *Perry v. McGinnis,* 209 F.3d 597, 604 n. 4 (6th Cir.2000). The Court examines this issue with respect to Galli's speech regarding the allegedly improper disposal of asbestos separately from the rest of Galli's speech upon which his claim is based.

### i. Speech Regarding Asbestos

■ With respect to Galli's speech concerning the asbestos issue, the Court finds that, even when the facts are viewed in the light most favorable to the Plaintiff, no reasonable trier of fact could conclude that this speech could have motivated Morelli's decision to terminate Galli's employment. Morelli removed Galli from the Stillman Hall project and told him to begin looking for other work well before Galli had discovered the asbestos issue. In addition, Galli never made any comments to Morelli regarding the asbestos issue, nor did he inform her that he had made any such comments to anyone else. Furthermore, Morelli was unaware that Galli had contacted OSHA regarding this issue until after his final termination letter had been issued.

Therefore, the Plaintiff has failed to raise a genuine issue of material fact with respect to whether his termination from employment was causally related to his speech regarding the allegedly improper disposal of asbestos. Therefore, the Court **GRANTS** the Defendant's Motion for Summary Judgment with respect to the Plaintiff's claim of retaliation based on his speech relating to the allegedly improper disposal of asbestos.

### ii. Speech Regarding Topsoil Issue, Wall Envelope, and Fireproofing

■ With respect to the remainder of Galli's speech, the Court finds that Galli has raised a genuine issue of material fact with respect to whether his speech was a motivating factor in Morelli's decision to terminate Galli's employment from OSU's Architect's Office. Although Morelli contends that Galli's termination was based solely on his poor communication and conflict resolution skills, as evidenced by his consistently poor evaluations and the problems he created in the Stillman Hall project, some of the evidence put forth by the Plaintiff belies that assertion. For example, although Morelli characterizes Galli's annual evaluations as having been consistently poor in the areas of communication and conflict resolution, Galli's evaluations actually indicate that Galli steadily improved in these areas virtually every year until his termination. In addition, Galli denies that he caused any delays or other problems in the Stillman Hall project. He asserts that any delays that resulted were caused by other people or factors, and that Morelli was aware of these other factors. He concludes, therefore, that Morelli could not have believed that Galli was the cause of any problems on the Stillman Hall project, and could not have terminated his employment on that basis. In light of the evidence set forth by the Plaintiff with regard to these issues, the Court finds that a reasonable trier of fact might conclude that it was Galli's speech, and not these other proffered reasons, that actually motivated Morelli's decision to terminate Galli's employment.

Therefore, the Court finds that the Plaintiff has raised a genuine issue of material fact with respect to his *prima facie* case of retaliation in violation of the First Amendment with respect to his speech relating to the topsoil issue, the wall envelope, and the fireproofing issue.

### 2. Same Decision

Although the Plaintiff has raised a genuine issue of material fact with respect to his *prima facie* case of retaliation based on his speech relating to the topsoil issue, the

wall envelope, and the fireproofing issue, the Defendant may nonetheless be entitled to summary judgment if she can demonstrate that she would have made the same employment decision even in the absence of the Plaintiff's speech. *See Cockrel*, 270 F.3d at 1057 (holding that a defendant is entitled to summary judgment if she demonstrates that every reasonable trier of fact would conclude that the plaintiff would have been terminated even if he had not engaged in protected speech).

██ Morelli contends that she would have dismissed Galli from employment even in the absence of his speech because of his deficiencies in the areas of communication and conflict resolution. The Court cannot find, however, that every reasonable trier of fact would conclude that the Defendant would have terminated Galli's employment even in the absence of his speech. A trier of fact might find, for example, that although Morelli is correct that effective communication and conflict resolution skills are vital to project captains, Galli was not lacking in this regard. A reasonable trier of fact might draw this conclusion in light of the evidence indicating that Galli received increasingly positive reviews in these areas, both from Morelli and outside parties. A reasonable trier of fact might also find that Galli acted appropriately with respect to the Stillman Hall project, and it was actually other parties and factors that caused any problems or delays on that project. Accordingly, a reasonable trier of fact might conclude that Morelli had no reasonable basis upon which to terminate Galli's employment other than his speech.

Therefore, the Court finds that the Defendant has failed to demonstrate that every reasonable trier of fact would conclude that she would have made the same employment decision even in the absence of the Plaintiff's protected speech, and **DENIES** the Defendant's Motion for Sum-

mary Judgment with respect to the Plaintiff's claim based on his speech relating to the topsoil issue, the wall envelope, and the fireproofing issue.

## B. Eleventh Amendment

Having determined that the Plaintiff has raised a genuine issue of material fact with respect to the retaliation claim against the Defendant in her official capacity based on his speech relating to the topsoil issue, the wall envelope, and the fireproofing issue, the Court proceeds to consider whether the Eleventh Amendment nonetheless bars that claim either in whole or in part.

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the text of the amendment seems to prohibit only suits against states brought by citizens of other states, it has long been held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (citations omitted). Courts have also recognized that the Eleventh Amendment bars suits against not only the state itself, but also suits against state officers when the state is the real party in interest, such as when the action is one to recover money damages that will be paid out of the state's treasury. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).

██ The Eleventh Amendment does not, however, present an absolute bar to suits against states and state officers in

federal court. In particular, the Eleventh Amendment will not bar a suit against state officers when the plaintiff seeks prospective injunctive relief to prevent the officers' future violation of federal law. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Nor will the Eleventh Amendment bar suit against a state or its officers when the state has consented to be sued or Congress has properly abrogated the states' immunity. *Kovacevich v. Kent State Univ.,* 224 F.3d 806, 817 (6th Cir.2000) (citing *Nelson v. Miller,* 170 F.3d 641, 646 (6th Cir.1999)).

### 1. Claims for Money Damages

With respect to the Plaintiff's claims for money damages, the determination of whether the Eleventh Amendment bars the Plaintiff's suit against Morelli in her official capacity turns on whether the state is the real party in interest by virtue of Morelli's position at OSU.

▮▮▮▮ Morelli asserts that, as an employee of OSU, she is entitled to Eleventh Amendment immunity as to the claims for money damages brought against her in her official capacity. The Court agrees. It is well-settled within the Sixth Circuit that Ohio's public universities and colleges are instrumentalities of the State and are, therefore, cloaked by the State's Eleventh Amendment immunity. *Hall v. Med. Coll. of Ohio at Toledo,* 742 F.2d 299, 307 (6th Cir.1984). Moreover, this Court has specifically found OSU to be an instrumentality of the State for Eleventh Amendment purposes. *Matteson v. Ohio State Univ.,* 2000 WL 1456988, *3 (S.D.Ohio Sept. 27, 2000); *Hines v. Ohio State Univ.,* 3 F.Supp.2d 859, 869 n. 5 (S.D.Ohio 1998); *Bailey v. Ohio State Univ.,* 487 F.Supp. 601, 606 (S.D.Ohio 1980). A claim against Morelli in her official capacity is tantamount to a claim against her office, an instrumentality of the State. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.... As such, it is no different than a suit against the State itself.") (citations omitted). Therefore, Morelli is entitled to the protection conferred by the Eleventh Amendment with respect to the claims for money damages brought against her in her official capacity.

Galli recognizes that prior cases within the Sixth Circuit have held that OSU is an entity of the State entitled to Eleventh Amendment immunity. He argues, however, that reliance on those cases is improper because, in *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), the Supreme Court recognized that the most important factor in Eleventh Amendment analysis is whether a judgment, if obtained, would be paid out of the state treasury. *Id.* at 48, 115 S.Ct. 394 ("Courts of Appeals have recognized the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations."). He states that, under *Hess,* a court is required to examine whether a judgment would, in fact, be paid out of the State treasury. *Id.* at 51, 115 S.Ct. 394 (recognizing that, where the State is not, in fact, obligated to bear the indebtedness of a particular enterprise, then the "core concern" of the Eleventh Amendment is not implicated). Thus, he contends that *Hess* abrogated *Hall* to the extent that the court in *Hall* essentially presumed payment of judgments by the State Treasury because of the close ties between state universities and the State but did not examine whether the judgment would, in fact, be paid out of the State Treasury. Galli argues that, because there remains a genuine issue of material fact as to whether any judgment would, in fact, be paid out of the State Treasury, summary judgment

860

on the grounds of Eleventh Amendment immunity would be improper.

Galli improperly characterizes the analysis in *Hall.* Contrary to his description of the analysis set forth therein, the court did not simply "presume" payment of a judgment would come from the State treasury, but engaged in a thorough analysis to determine that such was, in fact, the case. Indeed, Magistrate Judge King reached the same conclusion when she addressed these very arguments, as they were set forth by the parties upon Galli's Motion to Compel Discovery.

In October 2002, Galli sought to compel the deposition of the Treasurer of OSU to determine whether OSU, and in turn, Morelli acting in her official capacity, are protected by the Eleventh Amendment. In other words, he sought to determine who would, as a practical matter, pay any judgment that might be awarded. Morelli opposed the Motion to Compel, arguing that the deposition was unnecessary because both the Sixth Circuit and this Court had already clearly determined that OSU is protected by the Eleventh Amendment, thereby making any deposition on that issue an unnecessary burden and expense.

In her opinion on the Motion to Compel, Magistrate Judge King examined the case law and the arguments of the parties as follows:

In 1984, the Sixth Circuit developed a nine-part test to determine whether an agency or institution is an "arm or alter ego" of the state. *See Hall,* 742 F.2d 299. This test was based on the decision of the United States Court of Appeals for the Third Circuit in *Blake v. Kline,* 612 F.2d 718 (3d Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980), which held that[:]

local law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only

one of a number that are of significance. Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to use and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.

*Hall,* 742 F.2d at 302 (quoting *Blake,* 612 F.2d at 722). The Court in *Hall* applied this test and concluded that the Medical College of Ohio at Toledo was an "arm or alter ego" of the state.

.    .    .    .    .

Plaintiff argues, notwithstanding [cases within the Sixth Circuit finding that OSU is an instrumentality of the state of Ohio], that the United States Supreme Court decision in [*Hess* ] requires this Court to determine whether a judgment against OSU will be paid out of the State of Ohio's treasury. However, in *Hess,* the Supreme Court merely noted that, "[w]hen indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our primary guide," *i.e.,* the integrity of the state, and the avoidance of federal court judgments that must be paid out of a state's treasury. *Hess,* 513 U.S. at 47, 115 S.Ct. 394. The Supreme Court also observed, "Courts of Appeals have recognized the vulnerability of the State's purse as the most

salient factor in Eleventh Amendment determinations." *Id.* at 48, 115 S.Ct. 394. Nothing in *Hess* overrules or even alters the holding of the Sixth Circuit's decision in *Hall.* ... Indeed, the Sixth Circuit in fact recognizes "the vulnerability of the State's purse" as "perhaps the most important" factor. *Hall,* 742 F.2d at 304[;][s]*ee also Hutsell v. Sayre,* 5 F.3d 996, 999 (6th Cir.1993), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994). Likewise, *Hess* does not undermine the continued viability of any of the cases ... which concluded that OSU is cloaked with the protection of the Eleventh Amendment. [FN].

FN. In fact, since *Hess,* this Court has repeatedly concluded that OSU is an "arm or alter ego" of the State of Ohio, and thus protected by the Eleventh Amendment. *See Bell v. Ohio State Univ.,* (unreported) 2002 WL 193694, \*9 (S.D.Ohio 2002); *Spires v. Ohio State Univ.,* (unreported) 2001 WL 506511, \*6 (S.D.Ohio 2001); [*Anderson v. Ohio State Univ.,* 2001 WL 99858, \*4 (S.D.Ohio 2001)]; *Matteson,* 2000 WL 1456988, \*3.

Opinion and Order, Dec. 19, 2002 (King, M.J.).

The Court hereby **ADOPTS** the analysis set forth by Magistrate Judge King, and rejects the Plaintiff's argument that *Hall* and its progeny are no longer good law. For the same reasons, the Court **OVER-RULES** the Plaintiff's Objections to the Magistrate Judge's Opinion and Order, filed on December 27, 2002.

Therefore, the Court hereby **GRANTS** the Defendant's Motion for Summary Judgment with respect to the claim brought against her in her official capacity seeking monetary damages.

**14.** The Plaintiff argues, in addition, that he is entitled to seek backpay and frontpay along with reinstatement, and that such equitable remedies would not be barred by the Eleventh Amendment. The parties did not argue this issue with respect to the Defendant's Motion

### 2. Prospective, Injunctive Relief

As indicated above, the Eleventh Amendment does not prohibit a plaintiff from seeking prospective, injunctive relief from a state official sued in her official capacity. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Plaintiff asserts that, in addition to monetary damages, he seeks prospective, injunctive relief in the form of reinstatement. He contends that he seeks reinstatement by virtue of his *ad damnum* clause requesting "such equitable and further relief as may be just and appropriate." The Defendant contends that, despite this clause in the Complaint, the Plaintiff is not seeking any prospective, injunctive relief, including reinstatement.

A complaint must contain a demand for judgment for the relief that the plaintiff seeks. FED.R.CIV.P. 8(a). In his Complaint, the Plaintiff made a demand for judgment, and specified the relief he sought. Although the Complaint does not contain an explicit request for reinstatement, the request for "such equitable and further relief as may be just and appropriate" is sufficient to put the Defendant on notice that the Plaintiff might seek reinstatement. The Complaint alleges a termination from employment in violation of the Plaintiff's constitutional rights. Accordingly, the Complaint clearly indicates that reinstatement may constitute the equitable relief that would be just and appropriate under these circumstances.

Therefore, the Court finds that the Plaintiff may proceed with his claim against the Defendant in her official capacity seeking prospective, injunctive relief in the form of reinstatement.[14]

for Summary Judgment, but have expressed their intent to present this issue to the Court as the subject of a motion *in limine.* Therefore, at this point in the litigation, the Court reserves ruling on whether the Plaintiff would be permitted to pursue these remedies, or

## V. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Defendant's Motion for Summary Judgment with respect to the Plaintiff's claim of retaliation based on his speech relating to the allegedly improper disposal of asbestos. The Court **DENIES** the Defendant's Motion for Summary Judgment with respect to the Plaintiff's claim of First Amendment retaliation based on his speech relating to the allegedly improper request for payment for the topsoil work, the wall envelope, and the fireproofing issue, for which the Plaintiff seeks prospective, injunctive relief. The Court **GRANTS** the Defendant's Motion for Summary Judgment to the extent that the Plaintiff seeks to recover monetary damages.

**IT IS SO ORDERED.**

whether they would be barred by the Eleventh    Amendment.