RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0184P (6th Cir.)
File Name: 03a0184p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NETTA BANKS,
  *Plaintiff-Appellant,*

  *v.*

WOLFE COUNTY BOARD OF
EDUCATION, et al.,
  *Defendants-Appellees.*

No. 01-5985

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 99-00262—Karl S. Forester, Chief District Judge.

Argued: February 4, 2003

Decided and Filed: June 6, 2003

Before: GILMAN and GIBBONS, Circuit Judges;
POLSTER, District Judge.[*]

---

## COUNSEL

**ARGUED:** John C. Roach, RANSDELL, ROACH & WIER, Lexington, Kentucky, for Appellant. Mekesha H. Montgomery, FROST, BROWN & TODD, Cincinnati, Ohio,

---

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

2     *Banks v. Wolfe County
Bd. of Educ., et al.*                    No. 01-5985

for Appellees. **ON BRIEF:** John C. Roach, W. Keith Ransdell, RANSDELL, ROACH & WIER, Lexington, Kentucky, for Appellant. Catherine S. Wright, FROST, BROWN & TODD, Lexington, Kentucky, for Appellees.

POLSTER, D. J., delivered the opinion of the court, in which GILMAN, J., joined. GIBBONS, J. (pp. 17-18), delivered a separate concurring opinion.

---

## OPINION

---

DAN AARON POLSTER, District Judge. Plaintiff-Appellant Netta Banks appeals the district court's order granting summary judgment to Defendants-Appellees Wolfe County Board of Education, Stephen Butcher, and Howard Osborne on her First Amendment retaliation claim. For the reasons set forth below, the judgment of the district court is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

### I. Background

In 1993, Plaintiff-Appellant Netta Banks ("Banks") received a degree in elementary education. After her graduation, Banks began substitute teaching for the Wolfe County Board of Education ("Defendant Board"). In 1995, Banks was hired as a classified instructional aide with Defendant Board. In August of 1998, Banks became the parent liaison at Campton Elementary School. Banks was never employed by Defendant Board in a certified teaching position despite interviewing for several positions both before and after August of 1998.

In August of 1998, Howard Osborne ("Defendant Osborne") was hired as principal at Campton Elementary. On August 4, 1998, Banks interviewed for a primary teaching position at Campton Elementary with the Campton Site-Based

Council ("Campton Council"). Defendant Osborne was a member of the Campton Council. Krystal Evans, another applicant, was awarded the position.

Following this decision, Banks began to question the policies and procedures of the Campton Council. Banks spoke to several members of the Campton Council regarding Evans' hiring and the interviewing procedures that were or were not followed. On August 10, 1998, Banks directed an open records request to Defendant Osborne. Banks' request sought copies of the Campton Elementary School's site-based decision-making policies and procedures for the hiring of certified personnel, copies of her job description and personnel folder, and copies of the August 4, 1998 Campton Council's meeting.

In a letter dated August 13, 1998, Banks made a formal written complaint to the Office of Education Accountability of the Commonwealth of Kentucky ("OEA").[1] The letter alleges that the Campton Council failed to follow its policies and procedures in hiring Evans and that there had been irregularities in the hiring of three other primary positions. On or about August 14, 1998, Bill Stearns of the OEA contacted Defendant Osborne and requested information regarding the hiring of Evans. Defendant Osborne testified that the OEA neither gave him a copy of the complaint nor told him who the complainant was. On August 17, 1998, Defendant Osborne provided the OEA with documentation about the hiring of Krystal Evans.

In a letter dated October 9, 1998, Banks sent a second written complaint to the OEA and asserted twenty-eight allegations of wrongdoing by Defendants. On October 13 and 14, 1998, two OEA staff members conducted an on-site investigation at Campton Elementary and interviewed the

---

[1] Banks testified that she contacted the OEA by telephone before making a formal complaint. Additionally, during August and September, Banks spoke several times with the OEA on the telephone.

Campton Council members and Superintendent Stephen Butcher ("Defendant Butcher"). On December 14, 1998, the OEA sent Defendant Butcher the Preliminary Report and requested a formal response to the findings. On December 29, 1998, Defendant Butcher responded to the findings. On February 16, 1999, the OEA issued a final report.

Defendants assert that Banks' conduct adversely affected the school and the ability of its staff to meet the needs of the students. On or before October 13, 1998, Defendant Butcher met with and informed Banks that she was being transferred to the Family Resource Center. On October 13, 1998, Banks received a letter confirming the transfer. Banks alleges that she was transferred in retaliation for her filing the formal complaints with OEA. Banks further contends that she was not interviewed or hired for numerous jobs and that Defendant Butcher refused to forward her name to principals for open positions. Banks also asserts that the contract offered by Defendant Board for the 1999-2000 school year did not include a 3 percent raise and an additional $600 pay increase.[2] Banks did not sign the contract and accepted a certified teaching position in Powell County. Banks has taught at Stanton Elementary School in Powell County since August of 1999.

On July 12, 1999, Banks filed a 42 U.S.C. § 1983 complaint alleging a First Amendment claim and a state whistleblower claim. *J.A.* at 8-14. The district court granted summary judgment in favor of Wolfe County Board of Education, Stephen Butcher, and Howard Osborne on Banks' First Amendment claim. The district court concluded that Banks' speech did not address a matter of public concern. The district court dismissed with prejudice Banks' state

---

[2] On remand, Banks must clarify her contention. It is not clear from the record if she is claiming that she was denied across-the-board increases in retaliation for her complaints, or whether increases that were specifically promised to her were withdrawn after she filed her complaint.

whistleblower claim on statute of limitations grounds. In the present appeal, Banks challenges only the district court's granting of summary judgment in favor of Defendants on the First Amendment claim. Banks does not challenge the district court's ruling on her state whistleblower claim.

## II.  Standard of Review

This court reviews the district court's grant of summary judgment *de novo*. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he party opposing the motion may not rely solely on the pleadings and must adduce more than a mere scintilla of evidence; if the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.  Applicable Law

Not all speech by a public employee is protected by the First Amendment. In order to make out a *prima facie* case for a First Amendment claim, Banks, a public employee who claims that an employment decision was made in retaliation for engaging in protected speech, must show that: (1) "the plaintiff was engaged in constitutionally protected speech;

(2) the plaintiff was subjected to an adverse action or was deprived of some benefit; and (3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action." *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 896 (6th Cir. 2001) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). To demonstrate that Banks was engaging in constitutionally protected speech, she must show that her speech touched on matters of public concern, and that her "interest in making such statements outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ. of Township High School, Dist. 205*, 391 U.S. 563, 568 (1968); *Mt. Healthy City School Dist. Bd. of Educ.*, 429 U.S. at 284; and *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997). Whether speech addresses a matter of public concern is a question of law. *Barnes v. McDowell*, 848 F.2d 725, 733 (6th Cir. 1988). If a plaintiff's speech does not address a matter of public concern, no further inquiry is necessary. *Id.*

The Supreme Court has held that speech addressing a matter of public concern is speech relating to "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). By contrast, a public employee's speech dealing with "matters only of personal interest" is generally not afforded constitutional protection. *Id.* at 147. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. In general, speech involves matters of public concern when it involves "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg*, 253 F.3d at 898 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). If any part of an employee's speech relating to a matter of public concern is a substantial or motivating factor in the adverse action, the court must engage

in the balancing process set forth in *Pickering*. The court is required to: "balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. If retaliation for protected speech was a substantial or motivating factor in Defendants' disciplinary or adverse action against Banks, Defendants may present evidence that they would have taken this action in the absence of her protected conduct. *See Mt. Healthy City School Dist. Bd. of Educ.*, 429 U.S. at 285.

## IV. Analysis

Defendants argue that Banks' August 13 and October 9, 1998 complaint letters to the OEA relate to nothing more than her personal grievances, motivated by her self-interest in obtaining a certified position, and therefore do not address a matter of public concern. Banks contends that her complaint letters allege violations of state law including: (1) failure to follow established policies and procedures; (2) improper use of funds; (3) and improper hiring practices. Banks argues that these issues are matters of public concern.

This court has recognized that it is a difficult task for a court to determine if an employee's speech is protected or unprotected. *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001). Nearly anything a public employee says about the government entity might appear to be a matter of public concern. However, the Supreme Court has clarified that the category of protected speech is not this broad:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick*, 461 U.S. at 147.

In the instant case, the district court relied exclusively upon *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564 (6th Cir. 1997), and found that Banks' subjective motivations for contacting the OEA could be deduced from the record. Based on Banks' subjective motivations, the district court concluded that Banks' speech was merely a matter of personal concern and did not address a matter of public concern. The district court cited *Chappel* for the proposition "that an employee's motivation for speaking could dominate the substance of the employee's speech, rendering the 'point' or 'communicative purpose' of the employee's speech merely a matter of personal concern." *Banks v. Wolfe County Bd. of Educ.*, No. 99-262 (E.D. Ky. July 17, 2001) (Forester, C.J.). However, the district court apparently overlooked another portion of the *Chappel* holding: "Whether an employee's statement is predominated by 'the employee's personal interest qua employee' is primarily a content-based inquiry, not an exclusively motive-based inquiry." 131 F.3d at 575.

Since *Chappel*, this court has held that the subjective intent of the speaker, while relevant, is not a controlling factor. *See Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000) (the fact that the speaker was "complaining in the course of his personal employment dispute" did not matter); *Lucas v. Monroe County*, 203 F.3d 964, 974 (6th Cir. 2000) ("Plaintiffs need only show that their speech somehow related to a matter of community concern"); *Bonnell*, 241 F.3d at 812 ("[t]he motive which underlies an employee's statements is a relevant, but not necessarily dispositive factor") (citations omitted); and *Vaughn v. Lawrenceburg Power System*, 269 F.3d 703, 716-17 (6th Cir. 2001) (motive is relevant, but not necessarily the dispositive factor). In deciding this case, the district court did not have the benefit of this court's opinions in *Bonnell* and *Vaughn*. We conclude that the district court erred by according too much significance to Banks' personal motivations.

Because the district court focused on Banks' subjective motivation regarding the OEA complaint letters, it failed to recognize that the speech might be viewed as "mixed speech" involving both personal and public matters. Since 1983, this court has followed the Supreme Court's holding that the entirety of the employee's speech does not have to address matters of public concern, so long as some portion of the speech touches on a matter of public concern. *Connick*, 461 U.S. at 149. In *Connick*, the Supreme Court found that the content of a single question out of fourteen required application of the *Pickering* test because that one question involved an issue of public interest. *Id.* at 149-50. The Supreme Court held that, even though the plaintiff was speaking as an employee motivated by her private interest in combating her supervisors' decision to transfer her, the fact that one of her questions dealt with the fundamental constitutional right not to be coerced into campaigning for a political candidate was enough to make her speech touch on a matter of public concern. *Id.* at 148-49. The Supreme Court explained that the key question is not whether a person is speaking in his role as an employee or a citizen, but whether the employee's speech in fact touches on a matter of public concern. *Id.*

Just recently, this court has recognized that "[m]ixed questions of private and public concern, where the employee is speaking both as a citizen as well as an employee, can be protected." *Vaughn*, 269 F.3d at 716. *See also Bonnell*, 241 F.3d at 812 (6th Cir. 2001) ("although aspects of Plaintiff's speech involve matters of personal interest where he is speaking regarding a personal grievance as an employee, his speech also involves matters of public interest such that Plaintiff is speaking as a concerned citizen"). "Mixed speech" cases are the most difficult to adjudicate, "[b]ecause the employee admittedly speaks from multiple motives, [and] determining whether she speaks as a citizen or employee requires a precise and factually-sensitive determination." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 367 (5th Cir. 2000). "[I]n making this factual

determination, we generally look to what was said, rather than why it was said." *Vaughn*, 269 F.3d at 716.

## V.  Application

The record before this court establishes that Banks testified to having two different motives for contacting the OEA. One was purely personal; the other was public. Banks admits that she contacted the OEA because she felt that Defendants were not providing information about the hiring of Krystal Evans. Banks testified:

Q:  So when you say your turn has come, does that mean that –

A:  That means I have paid my dues, I have gotten my foot in the door and paid my dues, because up and to that point I had done anything and everything that any principal or anybody else had asked me to do for that school system.

*J.A.* at 198.

A:  I think--I really think that the main--the reason or the time frame for contacting OEA was because I was unable to get answers or get information or get whatever it was, and that--that was why I made my complaint.

*J.A.* at 234-35.

Further in her testimony, she stated that her concerns were broader:

Q:  Well, I'm kind of looking at what was your thought process about why you decided to call the OEA.

A:  I called OEA because I felt like that there were a lot of irregularities that were going on at our school and in the county school systems in general . . . I was

concerned for our school system as a whole. I wanted the things that were taking place to stop that were not right, that were went about illegally.

*J.A.* at 236-37.

   Q:   Was that your primary concern when you wrote out your letter to the OEA is why you cannot seem to be hired as a certified teacher in Wolfe County?

   A:   No, actually, it wasn't. My primary concern was, is why it is that we have all of these policies and procedures and all these laws and there [sic] not being followed. That was my primary concern.

*J.A.* at 251.

In considering "the content, form, and context" of the OEA complaint letters we conclude that Banks' concerns fall within the mixed speech category.[3] *Connick*, 461 U.S. at 147-48. A detailed analysis of the record as a whole establishes that Banks' complaint letters include allegations of Defendants' failure to follow both state law and their own hiring policies and procedures, and alleged financial mismanagement. Banks refers to favoritism/nepotism in hiring, the lack of posting and interviewing for job vacancies, and the improper certification of staff in the following paragraphs:

---

   [3]The content of an employee's speech should fairly put the employer on notice if she intends to raise a matter of public concern, and an employer should not have to guess or speculate. By giving an employer notice of the public concern, the employer has an opportunity to remedy it. As discussed *supra*, the *Connick* court found that one question out of fourteen raised a matter of public concern. However, that one question jumped out because it dealt with the fundamental constitutional right not to be coerced into campaigning for a political candidate. This case presents a much closer question.

Campton Elementary Site Base Council has a Policy and Procedures manual which has been adopted with guidelines that are very specific on the hiring of certified personnel (a copy is attached). The procedure for this is set up so that each applicant is interviewed by the Site Base Council and the Principal and each applicant is rated by a scoring guide, which determines how many points each applicant receives. *August 13, 1998 Letter to OEA*, ¶ 3.

[T]he Principal allowed a council member to remain seated even though their spouse was an applicant to be interviewed. A representative from Region 8 training center had already informed the Principal and the Council that a wife could not sit in on the interviewing process if her husband [Robert Brewer] was an applicant to be interviewed. The council member did not step down and her husband was hired as a primary teacher at Campton Elementary where the teacher council member also teaches. *Id.*, ¶ 8.

Without any posting, screening, or interviewing a young woman was called to come to work in a primary position which had no Board approval. Another primary position had been posted earlier for the 4th grade, but the position was already promised before the posting went up. *Id.*, ¶ 9.

[N]o postings and no librarian at Wolf Co. High School - was waiting on person to finish getting certification (Last school year). *Id.*, Handwritten Note, #1.

[N]ever been a posting for the Homebound District-Wide it is my understanding someone who has recently retired has filled the position (Ms. Wanda Creech). *Id.*, #2.

Librarian at Campton Elementary was not rehired. Replaced by a person whose certification is incomplete. *Id.*, #3.

Hiring at Rogers Elementary (Rita Drake). No posting or interviews. *October 9, 1998 Letter to OEA*, ¶ 10.

Hiring of 5th grade teacher (Connie Baker) at Campton Elementary. No posting and no interviews. *Id.*, ¶ 11.

Mr. Osborne . . . said that he was told to hire Mrs. Kristel Evans (August 4th) or he wouldn't have a job. As of that date Mrs. Evans was not certified. Because she was not certified she should have never gotten through the screening portion and yet she did and was hired for the position. *Id.,* ¶ 15.

Ms. Margie Hatton, Classified Employee Hired-Resigned-Job Posted and she was re-hired? With an increase in salary? I saw no Board minutes making that approval. *Id.*, ¶ 17.

"[T]he First Amendment is concerned not only with a speaker's interest in speaking, but also with the public's interest in receiving information." *Chappel*, 131 F.3d at 574. Public interest "is near its zenith when ensuring that public organizations are being operated in accordance with the law. . . ." *Id.* at 576 (internal quotations omitted). Kentucky Revised Statute § 160.380 provides in pertinent part that: "[a]ll employees of the local district shall have the qualifications prescribed by law and by the administrative regulations of the Kentucky Board of Education and of the employing board" and that "[t]he local school district shall post position openings in the local board office for public viewing." KY. REV. STAT. ANN. §160.380(2)(a);(b) (Baldwin 2003). Defendants' failure to follow state law is a "concern to the community." The community would have an interest in Defendants' hiring of non-certificated employees, for it could negatively impact the quality of student education. Defendants are required to post a vacancy, and Defendants' failure to post vacancies may have deprived qualified community members of the opportunity for employment. Defendants' favoritism/nepotism may also have deprived

community members of the opportunity to participate in an impartial interview. The community has an interest in knowing how the district's teachers are hired and when the district does not follow state law or its own hiring practices. Banks' allegations could affect the community and therefore touch upon matters of public concern. *See Perry*, 209 F.3d at 606 ("Because Perry's speech served to ensure that the [state agency] was operating in accordance with the law . . ., it concerns the most public of matters.").

Banks also argues that the portion of her speech wherein she criticized the improper allocation of public monies was a matter of public concern. Banks alleges that:

No job posted for librarian after the certified person retired. What happened to the monies which were allocated for [librarian] position? *October 9, 1998 Letter to OEA*, ¶ 5.

Gifted and Talented Teacher-monies have been approved by the Board for years and yet this is the first year a teacher has been hired. *Id.*, ¶ 6.

Youth Services Budget (Mike Gibbs, Coordinator). Personnel are being paid out of this budget that do not work for Youth Services. Mr. Gibbs can verify this and has the budget. *Id.*, ¶ 8.

ESS Services-have never been brought before the Site Base Council at Campton Elementary and yet personnel are working and being paid. *Id.*, ¶ 12.

Extra-curricular [activities]-Mr. Osborne said it was State mandated and Board Policy, but this has never come before the Site Base Council-personnel are working and being paid. *Id.*, ¶ 13.

[T]hree years in a row classified employees took a cut in pay while everyone else either stayed the same or got an increase. *Id.*, ¶ 19.

Budgets for Section 6 and Section 7 at Campton Elementary do not match, why? *Id.*, ¶ 20.

Can Mr. Howard Osborne continue to purchase without Site Base Council approval? *Id.*, ¶ 24.

Defendants are correct that "the fact that an issue involves public money is alone not enough to convert expressive activity into commentary on a matter of public concern." *Gragg v. Kentucky Cabinet for Workforce Development*, 289 F.3d 958, 966 (6th Cir. 2002) (citing *Rahn v. Drake Center, Inc.*, 31 F.3d 407, 412 (6th Cir. 1994)). The Sixth Circuit has explained that the point of the protection afforded public employees is to allow public employees a voice on issues actually affecting and interesting the community at large. *Id.* at 966. A public school district paying employees who were not qualified or who were not officially approved by council and arbitrarily paying raises to some of its employees are matters of public concern. Likewise, a school district making purchases without approval, not accounting for funds earmarked for a specific purpose, and not balancing sections of the budget would affect and interest the community taxpayers. *Cf. Connick*, 461 U.S. at 461; *Brandenburg*, 253 F.3d at 896.

While the vast majority of Banks' complaints are private grievances over her employment situation, some of her allegations touch on matters of public concern. Accordingly, we reverse the district court's grant of summary judgment and remand the case. The district court must analyze whether Banks' "interest in making such statements outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," to determine if Banks' speech is constitutionally protected. *Pickering*, 391 U.S. at 568, and *Bailey*, 106 F.3d at 144. If Banks' speech is constitutionally protected, then the district court must examine the remainder of the elements of Banks' First Amendment claim: that Banks was "subjected to an adverse action or was deprived of some benefit; and that

the protected speech was a 'substantial' or a 'motivating factor' in the adverse action." *Brandenburg*, 253 F.3d at 896 (citing *Mt. Healthy City School Dist. Bd. of Educ.*, 429 U.S. at 287). We emphasize that Banks can survive summary judgment only if her speech is constitutionally protected and she has produced evidence linking the protected portion of her speech to the adverse employment action.

## IV. Conclusion

Accordingly, the judgment of the district court is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

---

## CONCURRENCE

---

JULIA SMITH GIBBONS, Circuit Judge, concurring. The majority opinion appropriately follows the controlling Sixth Circuit precedent, and I generally agree with its application of our precedent to the facts of this case. I therefore concur in the result. I write separately, however, to emphasize the effect of application of the test used by this court in "mixed speech" cases. As set out in the majority opinion, the Sixth Circuit has held that in mixed speech cases, in order to trigger the *Pickering* balancing test, plaintiffs "need only show that their speech somehow related to a matter of community concern." *Lucas v. Monroe County*, 203 F.3d 964, 974 (6th Cir. 2000).

This approach, in my view, is not mandated by Supreme Court authority such as *Connick v. Myers*, 461 U.S. 138 (1983). In *Connick*, the Supreme Court observed that "government offices could not function if every employment decision became a constitutional matter." 461 U.S. at 143. *Connick* held that the speech of "a public employee [who] speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," is not protected. *Id.* at 147. The Fifth Circuit, applying this authority, has adopted an analysis that differs from the Sixth Circuit's test. When confronted with a mixed speech case, the Fifth Circuit asks "whether the speech at issue . . . was made primarily in the plaintiff's role as citizen or primarily in his role as employee." *Terrell v. Univ. of Texas Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986). This inquiry imposes a higher standard on plaintiffs than the alternative test, which asks only whether the employee speaks out of an interest that is not solely personal. *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 368 (5th Cir. 2000).

This court has explicitly rejected the test employed by the Fifth Circuit, stating that "the key question is *not* whether a person is speaking in his role as an employee or a citizen, but whether the employee's speech in fact touches on matters of public concern." *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1052 (6th Cir. 2001) (emphasis added). This approach, as noted, requires only that a plaintiff's speech "somehow related to a matter of community concern." *Lucas*, 203 F.3d at 974. Our test thus puts the question of whether a disgruntled employee obtains First Amendment protection solely in the control of the employee, who can successfully characterize her dispute as public rather than private by the addition of a few words on matters of public concern. The Fifth Circuit has expressed concern over this problem, stating that it is "unworkable" to allow "[t]he mere insertion of a scintilla of speech regarding a matter of public concern [to] make a federal case out of a wholly private matter fueled by private . . . interests." *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 382 (5th Cir. 1999). Beyond issues of workability, however, the Sixth Circuit test fails to take into account fully *Connick*'s recognition that every employment dispute involving a public employee is not a constitutional matter. *See Connick*, 461 U.S. at 143, 149.

The difference in application of the two tests is well-illustrated in this case. As the majority opinion notes, the "vast majority of Banks' complaints are private grievances over her employment situation." (Maj. Op. at 15.) Yet, Banks' mention of alleged Board failures to follow procedures and budgetary issues transformed her claims that she did not receive a primary teaching position and that she was transferred in retaliation for her complaint about the teaching position into a First Amendment claim. Under the Fifth Circuit test, the result would almost certainly be different.