NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0564n.06

No. 11-3842

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

May 31, 2012

LEONARD GREEN, Clerk

WILLIAM S. TERRY,

      Plaintiff-Appellant,

v.

UNITED STATES ENRICHMENT
CORPORATION, et al.,

      Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

_____/

Before:     MARTIN and DAUGHTREY, Circuit Judges; MALONEY, District Judge.[*]

     BOYCE F. MARTIN, JR., Circuit Judge. William S. Terry, a former employee of United States Enrichment Corporation (USEC) appeals the grant of summary judgment in favor of USEC on his claims of employment discrimination on the basis of age and his claim for sanctions for spoliation of evidence. For the reasons that follow, we AFFIRM the judgments of the district court.

I.

     Terry worked at the Portsmouth Gaseous Diffusion Plant from 1974 through his termination on July 15, 2005. He was employed by USEC and its predecessors for twenty-eight years; from 1993 until his termination he worked as a laboratory technician in the Applied Nuclear Technology Department. One of Terry's job duties was to measure the "assay," or uranium-235 istopic content,

_____

[*]Judge Paul L. Maloney, United States Chief District Judge for the Western District of Michigan, sitting by designation.

of cylinders of uranium hexafluoride received by the plant. Technicians at the plant used a Mobile

Enrichment Meter to take the measurement. The Meter is composed of several parts, including a

laptop computer and a high voltage input. As explained in the opinion and order from which this

appeal is taken, *Terry v. United States Enrichment Corp.*, No. 2:09-CV-624, 2011 WL 2635814, at

*1 (S.D. Ohio, July 5, 2011), measuring the assay of a cylinder requires following these five steps

in order:

> (1) create a database for each cylinder to be measured; (2) perform an initial quality control measurement using a known "standard"; (3) engage the [Meter] for a minimum period of time to ensure accurate reading; (4) observe the [Meter] in operation to assure that sufficient voltage is reaching the unit; and (5) provide a final quality control check using another known standard after the cylinder at issue is measured.

On June 27, the Meter stopped operating, or "crashed," while Terry was using it to measure

the assay of a cylinder. The Meter was known to be finicky, and crashed with some frequency both

before and after June 27. In this instance, the crash was a result of the failure of the high voltage

input. Terry reported that the Meter crashed to his supervisor, Dewey Cordle. According to Terry,

before the Meter crashed, it produced a reading. Terry contends he copied this reading from the

laptop display before the crash.

Cordle reviewed Terry's results from the attempted measurement, and concluded that,

because no database file had been created and no quality control checks had been performed, Terry

had fabricated the reading he recorded. Terry was questioned about the reading and was given two

weeks off while an investigation into the incident took place.

Kim Lassiter, Director of Human Resources, conducted an investigation into the incident. Lassiter interviewed Terry's managers and supervisors, and consulted several experts on the Meter, including Richard Mayer. Mayer tested the Meter as part of the investigation, and concluded it was impossible for Terry to have obtained the reading he recorded "because the system has to analyze the spectrum that is on the disk and that spectrum that was on the disk could not give that number." As a result of this investigation, Lassiter concluded that Terry had falsified the reading in question. Terry was terminated on July 15. After his termination, at Terry's request, William Reep, USEC's Employee Concerns Manager, conducted a new, separate investigation and also determined that Terry had falsified the reading in question.

Terry brought this suit against USEC and its parent, USEC, Inc., alleging age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and under Ohio law, Ohio Rev. Code § 4112.14. He also claimed negligent and intentional infliction of emotional distress and violation of Ohio public policy. During proceedings, Terry moved for sanctions against USEC for spoliation of evidence related to the repair and maintenance records for the Meter. USEC moved for summary judgment. The district court granted USEC summary judgment on all claims and denied Terry's motion for sanctions. Terry appeals the grant of summary judgment on his age discrimination claims and the denial of his motion for sanctions.

II.

"We review a district court's grant of summary judgment *de novo*." *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012). Summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir.2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The [Age Discrimination in Employment Act] prohibits an employer from discharging an employee 'because of such individual's age.'" *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (quoting 29 U.S.C. § 623(a)(1)). A plaintiff may establish a claim under the Act through direct or circumstantial evidence. *Lefevers*, 667 F.3d at 723. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)) (internal quotation marks omitted).

"Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the [Age Discrimination in Employment Act] analysis." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998). For this reason, the analysis that follows applies to both Terry's federal and state law claims.

III.

Terry has offered no direct evidence of age discrimination. He relies on circumstantial evidence to make his case. Terry was forty-nine years old at the time of his termination, and the duties for measuring the assay of cylinders fell primarily to a younger employee, Johnny Rexroad. Terry contends that USEC fired him due to his age because, only four months after the date of his

termination, he was due to vest in pension benefits worth $168,480. The district court found that he had offered enough circumstantial evidence to make a prima facie case of age discrimination under the framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). We assume, without deciding, that he has made a prima facie case of age discrimination.

"Once a prima facie case has been made, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Lefevers*, 667 F.3d at 725. "Once the defendant meets this burden, 'the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'" *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410-11 (6th Cir. 2008) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994)).

First, we assess whether USEC has articulated a "legitimate, non-discriminatory reason for the adverse employment action." *Lefevers*, 667 F.3d at 725. USEC states that it discharged Terry for falsifying the reading from the Meter on June 27, 2005. USEC's Employee Handbook states that: "[f]ailure to follow plant procedures will subject [employees] to disciplinary action, up to and including discharge"; "[e]mployees who knowingly submit false information on reports will be terminated"; and information provided to the Nuclear Regulatory Commission must be "accurate[ly] complet[ed]." Finally, the Handbook provides that "failure to give true facts or giving false information when . . . completing . . . business records" is "grounds for disciplinary action, up to and including termination, even for a first offense." USEC's stated reason for termination falls squarely within those provisions of the Handbook that require accurate completion of records provided to USEC's regulator and that prohibit giving false information when completing business records. We

hold that USEC has articulated a legitimate, non-discriminatory reason for terminating Terry's employment. The burden now shifts to Terry to show that this reason is pretextual. *Martin*, 548 F.3d at 410-11.

IV.

"For a plaintiff to show pretext, he must show the employer's given reason for its conduct 'had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct.'" *Lefevers*, 667 F.3d at 725 (quoting *Schoonmaker*, 595 F.3d at 268). "The 'plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.'" *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (alterations in original). We first adopted the "honest belief" rule in the context of the Rehabilitation Act, *Pesterfield v. Tenn. Valley Auth.*, 941 F.2d 437, 443-44 (6th Cir. 1991), and we have applied it in the context of the Age Discrimination in Employment Act, *Mickey*, 516 F.3d at 526. Our Circuit's formulation of the rule requires a strong showing by the employer to rebut a plaintiff's showing: "[t]o show an honest belief, 'the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Mickey*, 516 F.3d at 526 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)).

Terry has not produced evidence sufficient to show that USEC's stated reason for his termination "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." *Lefevers*, 667 F.3d at 725. After

Terry was placed on leave immediately following the June 27 incident, USEC conducted an investigation of the incident. In conducting the investigation, Lassiter reviewed records pertaining to the June 27 incident and to prior measurements taken by Terry. Lassiter also interviewed numerous USEC personnel, including several experts on the Meter. After Terry was terminated, two additional investigations were conducted: Reep conducted one investigation at Terry's request; the Nuclear Regulatory Commission conducted another independent investigation. All three investigations reached a similar conclusion: Terry had falsified the reading.

Terry argues that statements made by USEC employees Reep and Pam Sprouse, a Laboratory Information Management System Manager at USEC at the time of Terry's termination, create a genuine issue of material fact concerning the pretext issue. After being informed at his deposition that the Meter had malfunctioned with some regularity, Reep testified that, in hindsight, he "probably would have questioned" the decision to terminate Terry on the basis given. Sprouse similarly testified during her deposition that, at the time of Terry's termination, she did not know about the frequency of the Meter's malfunctioning.

Terry's arguments miss the mark. First, neither Sprouse nor Reep was involved in the decision to terminate Terry; it was Lassiter who recommended Terry's termination and, after that recommendation was approved by senior management, ultimately told Terry he was terminated. Further, Lassiter's statements during his deposition indicate that he, and those whom he interviewed during his investigation, were aware the Meter had "routine problems." Second, USEC does not dispute that the Meter malfunctioned on June 27, and that it malfunctioned often, both before and after June 27. Third, whether Sprouse and Reep knew of the frequency of the malfunction is not

relevant to USEC's reason for terminating Terry because Terry has failed to put forth evidence that USEC did not have an honest belief, at the time of termination, that Terry falsified the June 27 reading. And, when requesting Reep's separate investigation, Terry himself could have told Reep that the Meter routinely malfunctioned, though it appears Terry did not do so. Fourth, according to consistent reports from several experts, the Meter was designed in such a way that no final reading could possibly be taken before a database file had been created. For Terry's arguments about the persistent malfunction to hold water would require that on June 27 the Meter produced a reading at an earlier stage than it was capable of doing. Even if that had happened, Terry, an experienced and longtime operator of the machine, surely would or should have known that a reading produced before a database file had been created was not reliable or final.

USEC has offered evidence that it had a basis in fact to believe that Terry had falsified the reading in question. Three investigations of the incident were conducted and all reached the same conclusion: that Terry falsified the Meter reading. These three investigations were prompted by three separate and independent concerns. The first investigation was performed by USEC on its own initiative, one was performed, at Terry's request, by Reep; both of these investigations concluded that Terry had falsified the June 27 reading. The final investigation, performed after Terry's employment was terminated, was performed by USEC's outside regulator, the Nuclear Regulatory Commission. The Commission's investigation confirmed the concluded that Terry "willfully falsified" the results of the test.

As described above, USEC undertook a time-consuming and thorough investigation into the incident; that fact shows that USEC's belief was grounded in "reasonable reliance on the

particularized facts that were before it at the time the decision was made." *Mickey*, 516 F.3d at 526.

The Commission's investigation, which commenced July 19, and Reep's investigation, which commenced in August, both after Terry was terminated, support the conclusion that the reason given for Terry's discharge had a basis in fact. Terry has offered no relevant evidence, beyond the statements of Sprouse and Reep discussed above, to rebut USEC's showing that it had a basis in fact to believe, and had an honest belief at the time of his termination, that Terry had falsified the June 27 reading. For the same reasons discussed above, these statements do not change the fact that USEC held an honest belief, at the time of his termination, that Terry falsified the reading.

USEC's satisfaction of the "honest belief" rule is sufficient for us to affirm the district court. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) ("If there is no material dispute that the employer made a 'reasonably informed and considered decision' that demonstrates an 'honest belief' in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual."). We thus affirm the grant of summary judgment in favor of USEC on the age discrimination claims.

V.

Terry also appeals the district court's ruling denying his motion for sanctions based upon USEC's alleged spoliation of repair and maintenance records evidence. We review for an abuse of discretion a district court's decision regarding spoliation sanctions. *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). To show an inference of spoliation, *id.*, Terry:

must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to [his] claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Terry sought repair and maintenance records for the Meter. The district court concluded that certain raw data about the Meter's malfunctioning would be relevant to Terry's case, and ordered USEC to produce, if possible, "records relating to the raw data from the time period around [Terry's] termination." USEC produced these records, as well as records created around the time of Terry's termination by the Meter operators describing the Meter's malfunctioning and the maintenance and repairs performed on the Meter. Terry alleged that the records produced "shed no light on the technical cause of the malfunctioning and the maintenance and repair work that was done," and that records containing the information he sought must have existed or exist, but that USEC spoliated them. In response, USEC points to statements by two employees concerning the records. First, Keith Wines, an engineer, stated that, other than field data sheets which have been produced by USEC, he was unaware of the existence of any other records regarding the Meter's malfunctioning. Second, Sprouse stated that, other than the quality control data and underlying "raw data" produced inrepsonse to the district court's order, no other such records exist. The district court concluded that the production satisfied its order, and that Terry had offered "no basis upon which to conclude that [USEC] engaged in improper destruction of evidence." In our review, based upon the statements by Wines and Sprouse, Terry's lack of a showing to the contrary, and the district court's "broad discretion" to decide the matter, *id.*, we cannot conclude that the district court abused its discretion in denying Terry's request for sanctions.

VI.

We AFFIRM the judgments of the district court.